**Roland E. BAUER, d/b/a City Tire Service, a proprietorship, Appellant,**

v.

**UNIROYAL TIRE COMPANY, a division of Uniroyal, Inc., a Foreign Corporation and John Patterson, and Tires, Inc., a South Dakota Corporation, Appellees.**

**Roland E. BAUER, d/b/a City Tire Service, a proprietorship, Uniroyal Tire Company, a division of Uniroyal, Inc., a Foreign Corporation and John Patterson, Appellants,**

v.

**TIRES, INC., a South Dakota Corporation, Appellee.**

Nos. 79–1813, 79–1826.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1980.

Decided Sept. 26, 1980.

Lee A. Tappe, Tappe & Vavra, P. C., Platte, S. D., for appellee, Tires, Inc.

Robert B. Anderson, Pierre, S. D., for appellees, Uniroyal Tire Co., a division of Uniroyal, Inc. and John Patterson.

Charles Rick Johnson, Johnson, Johnson & Eklund, Gregory, S. D., for appellant.

Before LAY, Chief Judge, ROSS, Circuit Judge, and LARSON,* Senior District Judge.

LAY, Chief Judge.

This appeal arises from an action for conversion of tires brought by Roland Bauer, d/b/a City Tire Service, against John Paterson, a representative of Uniroyal Tire Co., and Uniroyal Tire Co., a division of Uniroyal Inc., a foreign corporation. Uniroyal was a creditor of Tires, Inc., a South Dakota corporation, whose president was Edward Bauer, Roland's father. Both City

---

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

Tire Service and Tires, Inc. operated out of 314 South Central, Pierre, South Dakota. The account of Tires, Inc. with Uniroyal was delinquent and Uniroyal obtained consent from Edward Bauer to take back some of Tires, Inc.'s inventory of tires. In December 1974 Paterson removed Uniroyal brand tires from 314 South Central in Pierre, believing the tires to be the inventory of Tires, Inc. Thereafter, both Roland Bauer as well as Tires, Inc. made claim to the tires. Tires, Inc. claimed that more tires were taken than the indebtedness due, whereas Roland Bauer asserted that he owned the entire inventory and that Uniroyal had wrongfully removed the tires. Upon suit Uniroyal filed an answer and under Rule 22 of the Federal Rules of Civil Procedure filed, as a compulsory counterclaim, an interpleader suit alleging it had received $9,719.05 in tires in excess of Tires, Inc.'s indebtedness. On the basis of conflicting claims it moved to join Tires, Inc. and requested the court to determine who was entitled to the excess amount. The district court, the Hon. Andrew W. Bogue presiding, granted Uniroyal's motion to join Tires, Inc. in the interpleader claim. After a plenary trial, the district court found that Tires, Inc. owned the tires and that they were removed with the consent of Edward Bauer, president of Tires, Inc. Roland Bauer has appealed from these findings, asserting there is insufficient evidence to sustain the finding of ownership in Tires, Inc. at the time the tires were repossessed. In Uniroyal's interpleader suit, the court determined that Tires, Inc. was entitled to the excess of the value of the tires taken over its indebtedness to Uniroyal. The court also allowed prejudgment interest on the excess from December 13, 1974, to the date its judgment was entered. Uniroyal has filed a separate appeal on this award. We affirm the respective judgments of the district court.

*Conversion.*

The factual background is adequately set forth in the district court's memorandum opinion. The district court held that Bauer,

as a separate entity, had failed to prove any ownership interest in the tires. Furthermore, the court ruled that possession and title to the tires was in Tires, Inc. This conclusion is adequately supported by the evidence and is not clearly erroneous.

■ The evidence showed and the trial court concluded that Tires, Inc. and City Tire Service were doing business as a single entity: (1) Uniroyal granted Tires, Inc. a protective charter to sell Uniroyal Zeta tires at retail and Tires, Inc. was the holder of that charter; (2) in its application for the charter, Tires, Inc. represented that 50% of its business was wholesale and 50% retail and it had facilities for selling tires at retail and for mounting them; (3) in dealings with Uniroyal representatives, Roland Bauer held himself out as a vice–president of Tires, Inc.; (4) Uniroyal and Tires, Inc., d/b/a City Tire Service, entered into an advertising expense sharing agreement that Uniroyal offered to its retail dealers; (5) Tires, Inc. applied for "new account assistance" from Uniroyal, a plan that Uniroyal offered only to retailers; (6) Roland Bauer wrote checks on City Tire Service's checking account in payment for debts owed by Tires, Inc. to Uniroyal; and (7) during the relevant time in question, Tires, Inc.'s only business address was 314 South Central, Pierre, South Dakota–the same address as City Tire Service's.

The district court also found (1) when Uniroyal tires were delivered to 314 South Central they were owned by Tires, Inc., and (2) plaintiff had no idea how much City Tire Service paid Tires, Inc. for Uniroyal tires during 1974.

The district court also found that Tires, Inc., through its president Edward Bauer, and City Tire Service, through its agent Harold Thompson, consented to the removal of the tires by Uniroyal. Thus, no conversion was shown.

The district court valued the tires at wholesale and not retail market value;[1] Tires, Inc. has not challenged this valuation. Since we find no basis to support plaintiff's

---

1. South Dakota law values property taken by wrongful conversion by its "market value." *See Kennel v. Atlas Elevator Co.*, 34 S.D. 101,

147 N.W. 272 (1914); S.D. Codified Laws § 21 3-3 (1979).

suit for conversion we deem the court's valuation of the tires to be proper as it relates to the accounting between Tires, Inc. and Uniroyal.

*Prejudgment Interest.*

■ The district court found that Uniroyal owed Tires, Inc. $11,089.93–the sum of the value of the tires seized that exceeded the debt owed by Tires, Inc. and the value of certain credits granted by Uniroyal to Tires, Inc.–and awarded interest of six per cent per annum on that sum to accrue from the day the tires were removed, December 13, 1974, to the date the judgment was entered. Uniroyal has filed a separate appeal; it claims the imposition of prejudgment interest is not warranted since ownership of the monies was disputed and it had filed an interpleader action.[2]

■ We deem it fundamental that whether prejudgment interest is allowable in a federal diversity action is determined by referring to the law of the state in which the cause of action arose. *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1013 (8th Cir. 1978). *See Bott v. American Hydrocarbon Corp.*, 458 F.2d 229, 231 (5th Cir. 1972). South Dakota law provides:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

S.D. Codified Laws § 21–1–11 (1979).

The value of the excess tires taken by Uniroyal which is due to Tires, Inc. was "capable of being made certain by calculation" on December 13, 1974, thus this initial requirement for an award of prejudgment interest was established. *See Simpson v. Norwesco, Inc.*, 583 F.2d 1007 (8th Cir. 1978); *Beka v. Lithium Corp. of America*, 77 S.D. 370, 92 N.W.2d 156 (1958).

■ "Interpleader is an equitable action controlled by equitable principles." *Great American Insurance Co. v. Bank of Bellevue*, 366 F.2d 289, 293 (8th Cir. 1966). Even if South Dakota law allows an award of prejudgment interest, a court will make an award in an interpleader action only if it is equitable to do so. *See Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 366 (5th Cir. 1975); *Powers v. Metropolitan Life Insurance Co.*, 439 F.2d 605, 609 (D.C.Cir.1971). Equity courts have developed the general rule that interest is awarded in interpleader actions only if the stakeholder unreasonably delays depositing the fund with the court. *See, e. g., Powers v. Metropolitan Life Insurance Co.*, 439 F.2d 605, 608 (D.C.Cir. 1971); *Equitable Life Assurance Society of the United States v. Miller*, 229 F.Supp. 1018 (D.Minn.1964) (Larson, J.); *Dennis v. Equitable Life Assurance Society*, 191 Ark. 825, 88 S.W.2d 76 (1935); *Messinger v. New York Life Insurance Co.*, 20 Wash.App. 790, 581 P.2d 1381, 1383 (1978).[3] If a delay is

---

**2.** Roland Bauer contests Uniroyal's interpleader action and joinder of Tires, Inc. He does so on the basis that (1) the amount initially interpleaded was not alleged to be in excess of the jurisdictional prerequisite of $10,000 and (2) Tires, Inc. ceased to be a "person" within Rule 22 since it was dissolved on July 1, 1977, for failing to file three consecutive annual reports with the South Dakota Secretary of State. S.D. Codified Laws § 47 7 52.1 (1979). Neither argument is valid. First, a federal court has ancillary jurisdiction over compulsory counterclaims that seek to bring in additional parties regardless of the amount alleged in the counterclaim. *See Walmac Co. v. Isaacs*, 220 F.2d 108 (1st Cir. 1955); *Ciechanowicz v. Bowery Savings Bank*, 19 F.R.D. 367 (S.D.N.Y. 1956); 3 Moore's Federal Practice ' 13.39, at 13 996 & n.22 (2d ed. 1979). *Cf. H. L. Peterson Co. v. Applewhite*, 383 F.2d 430 (5th Cir. 1967).

Second, a dissolved corporation may maintain a federal suit when it has been given that power by state law. *Froning's, Inc. v. Johnston Feed Service, Inc.*, 568 F.2d 108, 110 (8th Cir. 1978). South Dakota law provides that a corporation may sue or be sued two years after it has been dissolved. S.D. Codified Laws § 47–7 50 (1979). Tires, Inc. filed its answer on September 20, 1978, clearly within the two year statutory period.

**3.** In contrast, the Fifth Circuit seems to impose a type of strict liability on stakeholders who fail to deposit the interpleader fund into the court registry. *See, e. g., Phllips Petroleum Co. v. Adams*, 513 F.2d 355, 369 (5th Cir. 1975); *Kishi v. Humble Oil & Ref. Co.*, 10 F.2d 356, 357 (5th Cir. 1925). *Cf. Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976)

found to be unreasonable, interest is awarded from the date the indebtedness was due to the date the deposit was made. *See, e. g., Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 369 (5th Cir. 1975); *Equifax, Inc. v. Luster*, 463 F.Supp. 352, 357 (E.D.Ark. 1978) (Arnold, J.), *aff'd sub nom. Arkansas Louisiana Gas Co. v. Luster*, 604 F.2d 31 (8th Cir. 1979) (per curiam); *Massachusetts Mutual Life Insurance Co. v. Central Penn National Bank*, 372 F.Supp. 1027, 1035 (E.D. Pa.1974).

▮▮▮ In the present case, no deposit was required for jurisdiction since the interpleader action was brought pursuant to Rule 22, nor was a deposit requested by the claimants or required by the court.[4] Uniroyal made no deposit of the fund but argues that initiating the interpleader action is tantamount to a tender of a deposit. Assuming that filing the interpleader action was a sufficient tender of deposit, the record clearly demonstrates that Uniroyal unreasonably delayed in filing the interpleader suit. Uniroyal received a letter dated December 19, 1974, from Charles Poches, Roland Bauer's attorney, claiming conversion of the tires which were loaded by Uniroyal's representatives only six days earlier. In that letter, Poches asserts the interest of Bauer, d/b/a City Tire Service, in the tires. Since Uniroyal believed that the tires belonged to Tires, Inc., it knew or should have known on that date that there were competing interests in the tires. In a letter dated February 11, 1975, Tires, Inc.'s lawyer, Robert Looby, notified Uniroyal that the value of the tires taken exceeded Tires, Inc.'s indebtedness to Uniroyal, and Tires, Inc. had an interest therein. From its own documents, Uniroyal knew no later than March 19, 1975, that the value of the tires taken exceeded the debt owed it by Tires, Inc. by more than $4,000. Uniroyal did not, however, bring the interpleader action until March 1, 1976, and then it did so in a

counterclaim. Thus, its alleged offer came only under the compulsion of being sued by Bauer and City Tire Service. *Cf. Dennis v. Equitable Life Assurance Society*, 191 Ark. 825, 88 S.W.2d 76 (1935).

Uniroyal had no interest in the excess tires and therefore it is clear that the excess was payable to one of the claimants. We conclude interest is properly accrued from the date the tires were repossessed by Uniroyal, December 13, 1974, until at least March 1, 1976, when the interpleader action was belatedly initiated.

▮▮▮ The remaining question is whether the filing of the interpleader action was a sufficient unconditional tender to toll the running of prejudgment interest as of the filing date. Uniroyal asserts that South Dakota Codified Laws § 20–5–18 tolls the running of prejudgment interest as of the date Uniroyal filed its counterclaim and interpleader. Section 20–5–18 provides:

> An offer of payment or other performance, duly made, though the title to the thing offered be not transferred to the creditor, stops the running of interest on the obligation, and has the same effect upon all its incidents as a performance thereof.

S.D. Codified Laws § 20–5–18 (1979).

Uniroyal made no deposit of the fund but argues that initiating the interpleader suit is tantamount to an "offer" within the meaning of section 20–5–18. We disagree. The South Dakota Supreme Court has had little opportunity to interpret section 20–5–18 and its predecessors. *See Pittsburg Plate Glass Co. v. Leary*, 25 S.D. 256, 126 N.W. 271 (1910); *Smith v. Widmann Hotel Co.*, 74 S.D. 118, 49 N.W.2d 301 (1951). In order to stop the accruing of interest, a tender must be an "unconditional tender" which effectively deprives the stakeholder of dominion over the fund. *See Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1165

(the court expressed the general rule, however, the result followed *Phillips*).

4. The district court has discretionary power to require a deposit in a Rule 22 interpleader action. *See, e. g., Percival Constr. Co. v. Miller &*

*Miller Auctioneers Inc.*, 532 F.2d 166, 171 (10th Cir. 1976); *Emmco Ins. Co. v. Frankford Trust Co.*, 352 F.Supp. 130, 133 (E.D.Pa.1972); 3A Moore's Federal Practice ¶ 22.10, at 22–99 (2d ed. 1979).

(5th Cir. 1976); *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 370 (5th Cir. 1975); *Equifax, Inc. v. Luster*, 463 F.Supp. 352, 356–57 (E.D.Ark.1978) (Arnold, J.), *aff'd sub nom. Arkansas Louisiana Gas Co. v. Luster*, 604 F.2d 31 (8th Cir. 1979) (per curiam); *Equitable Life Assurance Society of the United States v. Miller*, 229 F.Supp. 1018, 1021 (D.Minn.1964) (Larson, J.); *Pittsburg Plate Glass Co. v. Leary*, 25 S.D. 256, 126 N.W. 271 (1910).

Courts have recognized that an actual deposit of or an unconditional offer to deposit the interpleader fund serves at least two purposes:

(1) it protects the claimants from the risk that the stakeholder or its surety will become insolvent, *see, e. g., Equifax, Inc. v. Luster*, 463 F.Supp. 352, 356 (E.D.Ark.1978) (Arnold, J.), *aff'd sub nom. Arkansas Louisiana Gas Co. v. Luster*, 604 F.2d 31 (8th Cir. 1979) (per curiam); 3A Moore's Federal Practice ¶ 22.10, at 22–99 (2d ed. 1979); and

(2) it prevents the stakeholder, who has no claim to the fund, from using the fund for his benefit and, thus, becoming unjustly enriched at the expense of the claimants who have a colorable interest in the fund, *see, e. g., Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 368–69 (5th Cir. 1975); *Caine v. John Hancock Mutual Life Insurance Co.*, 313 F.2d 297, 302 (6th Cir. 1963); *Massachusetts Mutual Life Insurance Co. v. Central Penn National Bank*, 372 F.Supp. 1027, 1035 (E.D.Pa.1974). Neither of these purposes are accomplished by merely filing an interpleader suit. Furthermore, neither claimant could accept Uniroyal's alleged offer nor does filing deprive Uniroyal of use of the fund. On this basis, we conclude that filing an interpleader action does not constitute an "offer" within the meaning of section 20–5–18 and thus that section did not toll the accruing of interest. We hold the district court properly awarded interest from the date Uniroyal seized the tires to the date of entry of the judgment.

The judgment in No. 79–1813 is affirmed. The judgment in No. 79–1826 is affirmed.